JOHN McNAMEE, Independent Ex'r of the Estate of Steven McNamee, Deceased, Plaintiff-Appellee, v. FEDERATED EQUIPMENT AND SUPPLY COMPANY *et al.*, Defendants and Third-Party Plaintiffs-Appellees (The City of Chicago, Third-Party Defendant-Appellant).

First District (4th Division)    No. 1—96—1825

Opinion filed February 13, 1997.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Anne Berleman Kearney, Assistant Corporation Counsel, of counsel), for appellant.

James K. Toohey and Jeffrey S. Dunlap, both of Ross & Hardies, of Chicago, for appellee Deutsche Schlauchboot Fabrik Hans Scheibert GMBH & Company.

Beth Anne Janicki, of Illinois Municipal League, of Springfield, for *amicus curiae*.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

In *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 585 N.E.2d 1023 (1991), the supreme court held that an employer's liability in contribution was limited to that employer's liability to its employee under the provisions of the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)). *Kotecki* involved a private employer. The question in this case is whether the *Kotecki* doctrine applies to a public employer under the provisions of the Illinois Pension Code (40 ILCS 5/1—101.1 *et seq.* (West 1994)). We conclude it does not.

## BACKGROUND

Steven McNamee, a Chicago fireman, lost his life when he attempted to jump into a "Life Cube" during a training exercise at the Chicago Fire Academy.

The Life Cube was an inflatable rescue device. Its German manufacturer had placed a German language label on the device warning that it was to be used only to catch jumping or falling persons in emergency rescue situations and was not to be used for exercise, training, or sport jumping. The American distributor replaced the German language warning label with a warning, in En-

glish, that the product was to be used only in emergency rescue situations.

McNamee, a 36-year-old candidate for a firefighter position, had been ordered to jump into the inflatable rescue device during a training program. His estate brought suit against the manufacturers and distributors of the Life Cube—Deutsche Schlauchboot Fabrik Hans Scheibert GMBH & Co. (DSB), Federated Equipment & Supply (Federated), Emetko, Inc., and Amkus, Inc. DSB and Federated then brought a third-party action for contribution against the City of Chicago (the City) under the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/5 (West 1994)), alleging wilful and wanton misconduct by the City.

The City moved to dismiss the third-party claims for unlimited contribution, arguing that its liability was limited to the medical and death benefits it had provided pursuant to section 22—307 of the Pension Code. 40 ILCS 5/22—307 (West 1994).

The trial court denied the City's motion in an order dated June 7, 1995. A motion to reconsider was denied on April 3, 1996. On May 13, 1996, the trial court certified a question of law for immediate appeal under Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)). We granted the City's application for leave to appeal.

The question certified for review is:

> "What limits, if any, are there on the City of Chicago where it is sued as a third-party defendant under the Contribution Act, 740 ILCS 100/1 et seq., where the City has paid and continues to pay benefits pursuant to the Pension Code, 40 ILCS 5/6—101 et seq., to the plaintiff whose decedent was a firefighter?"

The City admits it has "some liability in contribution." Because of the City's concession, we will assume, without deciding, that a contribution action may be brought against the City under these circumstances. We also will assume, without deciding, that the City can assert its statutory lien (section 22—308) in cases where its wilful and wanton conduct has been found to be a proximate cause of its employee's injury. In short, we confine ourselves to consideration of the certified question. Our answer to the question is that we find no limits to recovery against the City as a third-party defendant in contribution.

## DECISION

To determine whether *Kotecki* should be extended to the Pension Code, we first examine and compare the relevant provisions of the Pension Code and the Workers' Compensation Act (Act) (820 ILCS 305/5(a), (b) (West 1994)).

Section 22—307 of the Pension Code, in pertinent part, provides:

"Whenever any city or village enacts an ordinance pursuant to this Division, no common law or statutory right to recover damages against such city or village for injury or death sustained by any policeman or fireman while engaged in the line of his duty as such policeman or fireman, other than the payment of the allowances of money and of medical care and hospital treatment provided in such ordinance, shall be available to any policeman or fireman who is covered by the provisions of such ordinance, or to anyone wholly or partially dependent upon such policeman or fireman, or to the legal representative of the estate of such policeman or fireman, or to anyone who would otherwise be entitled to recover damages for such injury or death." 40 ILCS 5/22—307 (West 1994).

Section 5(a) of the Workers' Compensation Act, in pertinent part, provides:

"No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representative of his estate, or any one otherwise entitled to recover damages for such injury." 820 ILCS 305/5(a) (West 1994).

Section 22—308 of the Code, in pertinent part, states:

"Where the death of a policeman or fireman for which an award or allowance of money is payable by any city or village under any ordinance enacted pursuant to the provisions of this Division, was not proximately caused by the negligence of such city or village, and was caused under circumstances creating a legal liability for damages on the part of some person other than such city or village, then legal proceedings may be taken against such other person to recover damages notwithstanding such award or allowance by such city or village. If the action against such other person is brought by the personal representative of such deceased policeman or fireman, and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then the amount received by such representative shall be deducted from such award or allowance. Such city or village may have or claim a lien upon any judgment or fund out of which such representative might be compensated from such third party, for any moneys paid out of such award or allowance previous to such judgment or settlement." 40 ILCS 5/22—308 (West 1994).

Section 5(b) of the Workers' Compensation Act, in pertinent part, states:

> "Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received \*\*\* there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.
> \*\*\*
> If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party." 820 ILCS 305/5(b) (West 1994).

The City contends the two acts are so similar, and so parallel in purpose, that it naturally follows *Kotecki* should apply to both. No reported case in this state has directly addressed the issue framed by the certified question. While the Pension Code has been compared to the Act in some decisions, in each instance the case involved direct actions by an employee against the municipality or against a public employee entitled to indemnification by the municipality. See *Mitsuuchi v. City of Chicago*, 125 Ill. 2d 489, 532 N.E.2d 830 (1988); *Fligelman v. City of Chicago*, 275 Ill. App. 3d 1089, 657 N.E.2d 24 (1995); *Village of Winnetka v. Industrial Comm'n*, 232 Ill. App. 3d 351, 597 N.E.2d 630 (1992); *Sweeney v. City of Chicago*, 131 Ill. App. 2d 537, 266 N.E.2d 689 (1971). These decisions do not help us in this case.

The City's argument has a surface attraction. The relevant provisions of the Pension Code and the Act bear some similarities. Each, for example, seems to eliminate the employee's ability to sue his or her employer directly. Closer inspection, however, persuades us we cannot make the leap of faith urged on us by the City.

Section 22—307 of the Pension Code provides that a policeman or fireman, or the dependent of a policeman or fireman, or anyone who

would be entitled to recover damages for injury to a policeman or fireman, has no common law or statutory right to recover damages directly from any city or village that enacts an ordinance pursuant to the Pension Code. All that any of these people would be entitled to is "payment of the allowances of money and of medical care and hospital treatment" provided in the ordinance. 40 ILCS 5/22—307 (West 1994).

The City suggests the section 22—307 phrase "or to anyone who would otherwise be entitled to recover damages for such injury" refers to a third-party plaintiff in contribution. 40 ILCS 5/22—307 (West 1994). Putting aside the City's concession that it may be sued directly in a contribution action, we note that the Pension Code, in its present form, was in existence well before 1960. The legislature could not have been thinking about contribution actions when it enacted the Pension Code. At that point, no Illinois court, and certainly not the legislature, recognized a contribution action in this state.

In addition, we note that a plaintiff in contribution does not "recover damages for such injury" but, instead, is entitled to an apportionment of damages based on "his own pro rata share of the common liability." 740 ILCS 100/2(b) (West 1992).

The right of contribution among tortfeasors was created by the supreme court in 1977, in *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill. 2d 1, 374 N.E.2d 437 (1977). There, for the first time, the court determined that a defendant manufacturer sued in strict liability had the right of contribution against an employer, despite the fact that the Act limited the employee's ability to sue the employer directly. The Contribution Act codified the *Skinner* decision.

In *Doyle v. Rhodes*, 101 Ill. 2d 1, 461 N.E.2d 382 (1984), the court was asked to reexamine the issues presented in *Skinner* in light of the Contribution Act. Again, the court decided employers were not immune from liability for contribution.

The court never considered in *Doyle* whether there were any limits to the amount employers could be liable for in contribution actions, although it did "caution that some accommodation between these two statutes [the Contribution Act and the Act] may be in order." *Doyle*, 101 Ill. 2d at 15. That "accommodation" was the issue in *Kotecki*.

Looking to other jurisdictions, the *Kotecki* court searched for harmony between the two "potentially conflicting" statutes (the Contribution Act and the Act) which would provide the fairest and most equitable balance between the competing interests of the employer

and the third-party plaintiff. The court adopted the "Minnesota Rule," which allowed the third-party plaintiff to obtain limited contribution, yet preserve the employer's interest in not paying more than its liability under the Act.

*Kotecki* is at the heart of the City's position in this case. The City contends there is no real difference between the wording and purpose of the Pension Code and the Act. Therefore, says the City, *Kotecki* applies, limiting the third-party plaintiff's recovery to the amount of the City's lien under section 22—308 of the Pension Code. We see some differences, crucial differences.

The *Kotecki* court found that the "language of the Workers' Compensation Act clearly shows an intent that the employer only be required to pay an employee the statutory benefits." *Kotecki*, 146 Ill. 2d at 165. That finding of legislative intent was based on section 11 of the Act: "The compensation herein provided *** shall be the measure of the responsibility of any employer." 820 ILCS 305/11 (West 1994). The Pension Code does not contain similar language. It does not contain any indication that the liability of a municipal employer was intended to be limited to the compensation provided for in the Pension Code.

*Kotecki* struck a balance between competing interests of the employer, as a participant in a no-fault system of recovery, and the third-party plaintiff, who seeks to pay no more than its established fault. But an injured private employee's right of recovery under the Act can be much broader than the City's limited lien under section 22—308. The balance becomes unhinged.

Section 22—308 provides that the City's lien against a judgment or settlement obtained from a third party is limited to the amount paid out by the City "previous to such judgment or settlement." 40 ILCS 5/22—308 (West 1994). Any money paid or payable after the judgment or settlement would not be included in the statutory lien. The pension payouts to widows and dependents, funded in whole or in part by employees, would not be included in the section 22—308 lien.

In this case, where the trainee died soon after the accident, the City's lien would be limited to a one-time death benefit and medical payments, a total of slightly more than $58,000. (Actually, the death benefit paid was twice as high as required, since the city council voted to double the statutory award for McNamee's widow.) Compare that figure to the potential recovery the trainee's personal representative could claim under the Act had the employer been private, not public.

A private employer's liability under the Act would consist of

widow's benefits (payable for 20 years), burial expense, and medical payments. Assuming the employee earned $41,375.12 a year, and further assuming medical expenses of $28,231.80, as was the case here, the private employer's liability under the Act would total slightly more than $584,000. We believe that the limited scope of the City's lien under section 22—308 is not consistent with *Kotecki*'s desire to find "the fairest and most equitable balance" between the competing interests of the joint tortfeasors. *Kotecki*, 146 Ill. 2d at 165.

While the Pension Code elsewhere provides for payment of widow's and dependents' benefits, the City contends, and we agree, that those sums of money are not part of the City's statutory lien. The payments, however, are part of the City's liability to the deceased's widow and dependents. The section 22—308 lien does not reflect the "full measure" of the employer's liability. The linchpin for the *Kotecki* holding does not apply in this case.

The City contends that applying the *Kotecki* doctrine to public employers would be good policy. Otherwise, the City says, it would be open to a contribution award far beyond the amounts it paid and then could recover under its statutory lien. That could happen. Of course, first, the contribution plaintiff would have to satisfy a jury that the City's conduct was wilful and wanton. See *Buell v. Oakland Fire Protection District Board*, 237 Ill. App. 3d 940, 605 N.E.2d 618 (1992). (Again, we are assuming without deciding that the City would have a section 22—308 lien after a jury found its wilful and wanton conduct was a proximate cause of the injury.)

Part of the equation in *Kotecki* was a consideration of the nature of private industry. That is, after *Skinner* and *Doyle* seemed to place a private employer in financial jeopardy because of the risk of large contribution awards, *Kotecki* returned to the employer an element of economic stability. Its potential liability would be a known quantity—the extent of its liability under the Act. See M. Bilandic, *Workers' Compensation, Strict Liability, and Contribution in Illinois: A Century of Legal Progress?* 83 Ill. B.J. 292 (1995).

A public entity is in a different position. The City will have to have a fire department and a police department. It cannot go out of business. A governmental entity, "unlike a private entity, cannot ordinarily avoid the risks created by its activities by simply ceasing to engage in those activities." *Stephens v. McBride*, 97 Ill. 2d 515, 523, 455 N.E.2d 54 (1983) (holding that the notice provisions of the Local Governmental and Government Employees Tort Immunity Act do not apply to an action for contribution).

We understand the City's concern. Jury trials are risky. Exposure in a contribution action where the employee suffers grave or fatal

814

injuries can be substantial. Predictability is important for budget and planning departments. But it is this court's role to interpret statutes, not rewrite them based on some vague notion of proper public policy. See *Citizens Utility Board v. Illinois Commerce Comm'n*, 275 Ill. App. 3d 329, 341, 655 N.E.2d 961 (1995). That is, "[t]he primary expression of Illinois public and social policy should emanate from the legislature." *Charles v. Seigfried*, 165 Ill. 2d 482, 493, 651 N.E.2d 154 (1995).

CONCLUSION

We find no principled reason for reading into the Pension Code and the Contribution Act any limitation on the City's liability when it is being sued as a third-party defendant under the Contribution Act in a case where the City's employee suffered a fatal injury. Our answer to the certified question is that there are no limits.

Certified question answered.

McNAMARA and BURKE, JJ., concur.